FILED

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

01 MAR 30  PM 2: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

The UNITED STATES OF AMERICA }
ex rel. TERI L. FLANAGAN, }
}
    **Plaintiff,** }
}
}    **CASE NO. CV 97-B-3070-S**
**v.** }
}
**BAPTIST HEALTH SYSTEM, INC.,** }
**et al.,** }
}
    **Defendant.** }

**ENTERED**

MAR 3 0 2001

## MEMORANDUM OPINION

Currently before the court is the Defendants' Motion to Dismiss Complaint of the United

States in Intervention and Relator's *Qui Tam* Complaint, filed by defendants Baptist Health

Systems, Inc. ("BHS"); Coosa Valley Baptist Medical Center; Coosa Valley Home Health, Inc.;

Citizens Baptist Medical Center; Cullman Regional Medical Center, Inc.; Cherokee Baptist

Medical Center; DeKalb Baptist Medical Center; Lawrence Baptist Medical Center; Marion

Baptist Medical Center; Birmingham Baptist Medical Center Montclair; Birmingham Baptist

Medical Center Princeton; Shelby Baptist Medical Center; and Walker Baptist Medical Center

(collectively "defendants"), on May 5, 2000. On November 24, 1997, Teri L. Flanagan

("Relator"), as *qui tam* relator on behalf of the United States of America, filed a Qui Tam

Complaint ("Relator's Compl.") under seal against defendants[1] alleging a pattern of fraudulent

Medicaid and Medicare billing and reimbursement, in violation of the False Claims Act

("FCA"), 31 U.S.C. § 3729 *et seq.* The United States of America ("the government") elected to

---

[1] Relator's Complaint only named BHS; Coosa Valley Medical Center Foundation d/b/a
Coosa Valley Baptist Medical Center; Coosa Valley Home Health, Inc.; Citizens Baptist Medical
Center; and Cullman Regional Medical Center, Inc. as defendants.



intervene on certain allegations and causes of action contained in Relator's Complaint. The government filed a notice of partial intervention on February 28, 2000, and filed the United States' Complaint ("Government's Compl.") against defendants[2] on April 6, 2000, alleging violations of the FCA; unjust enrichment; willful, negligent, or reckless misrepresentation pursuant to Alabama Code § 6-5-101; and payment by mistake.[3] Defendants contend that both Complaints are due to be dismissed under Federal Rule of Civil Procedure 12(b)(6) because:

1.    The complaints utterly fail to provide the defendants with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure;

2.    The Government's state law claims suffer from the same failure to plead with particularity required under Rule 9(b), are also time-barred;

3.    The Relator's complaint violates Articles II and III of the U.S. Constitution; and

4.    The Relator's conspiracy claim is due to be dismissed for her failure to plead the requisite elements of a conspiracy.

---

[2] The government asserted claims against all defendants named in Relator's Complaint, with the exception of Coosa Valley Home Health, and added defendants Cherokee Baptist Medical Center, DeKalb Baptist Medical Center, Lawrence Baptist Medical Center, Marion Baptist Medical Center, Birmingham Baptist Medical Center Montclair, Birmingham Baptist Medical Center Princeton, Shelby Baptist Medical Center, and Walker Baptist Medical Center. The government noted that all defendants named in their Complaint are wholly or partially owned, operated, or managed by BHS, which was named in both Relator's Complaint and the government's Complaint. (Government's Compl. at unnumbered 2.) At oral argument, the government admitted that it inadvertently failed to obtain records from defendant Cherokee Baptist Medical Center. Thus, the government's Complaint as to this defendant is due to be dismissed.

[3] The government at first asserted a claim of payment by mistake under Alabama Code § 7-3-418. However, the government has since conceded that this Code section is inapplicable and asserts a general common law claim of payment by mistake. (*See* Response of United States to Defendants' Motion to Dismiss ("Government's Response") at 13) ("The United States does agree with Defendants that Alabama Code 7-3-418 referenced in 'Count Five' of the complaint probably does not apply. However, a general common law assertion of mistake of fact is also pled in that count.")

(Defendants' Motion to Dismiss Complaint of the United States in Intervention and Relator's

Complaint ("Defs.' Mot.") at 1-2.)  Upon consideration of the Motion, the submissions of the

parties, the arguments of counsel, and the relevant law, the court is of the opinion that

defendants' Motion is due to be granted in part and denied in part.

## I.  FACTUAL AND PROCEDURAL SUMMARY

Relator was employed as the Director of Rehabilitation Services for defendant Coosa

Valley Baptist Medical Center from August 1997, through November 7, 1997.  (Relator's

Compl. at ¶ 10.)  Relator alleges that during this time, she became aware of a variety of schemes

that defendants required its employees to implement, consisting of (1) submitting Medicare and

Medicaid reimbursement claims for physical therapy and other rehabilitation services even

though the initial evaluations and recertification evaluations were performed by unlicensed

individuals; (2) submitting Medicare and Medicaid reimbursement claims for ongoing physical

therapy and other rehabilitation services even though such services were administered by

unsupervised and unlicensed individuals; (3) submitting and/or maintaining fabricated

documentation to support Medicare and Medicaid reimbursement claims for physical therapy,

skilled nursing, and other rehabilitative services; (4) routinely submitting Medicare and

Medicaid reimbursement claims for numerous services, primarily in the area of physical therapy

and skilled nursing, when the documentation to support the "medical necessity" for such services

was either lacking or directly contraindicated; (5) submitting Medicare and Medicaid

reimbursement claims for outpatient services in violation of the "72-hour rule;" and

(6) submitting false and fraudulent Medicare and Medicaid reimbursement claims in connection

with laboratory billing. (*See* Relator's Compl. at ¶ 11.)  Relator further alleges that the

fraudulent billing practices for physical therapy and skilled nursing services have occurred with

respect to patient care provided in the inpatient units, outpatient facilities, home health agencies, and skilled nursing facilities, and that the defendants named in her Complaint have falsely and fraudulently included the various costs associated with such services on hospital cost reports. (*Id.*)

Specifically, Count I of Relator's Complaint alleges that the defendants named in her Complaint violated 31 U.S.C. § 3729(a)(1) because they submitted false or fraudulent claims to the government for payment or approval. (*See* Relator's Compl. at ¶¶ 32-34.) Count II alleges that these same defendants violated 31 U.S.C. § 3729(a)(2) because they knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims allowed or paid by the government. (*See id.* at ¶¶ 35-39.) Count III alleges that these defendants violated 31 U.S.C. § 3729(a)(3) by conspiring with numerous individuals and entities to defraud the government. (*See id.* at ¶¶ 40-42.) Count IV alleges that defendant Coosa Valley wrongfully terminated Relator in violation of 31 U.S.C. § 3730(h). (*See id.* at ¶¶ 43-45.)

Relator served her Complaint on the government at or about the time of filing, and the government subsequently initiated an investigation into the allegations raised in Relator's Complaint. The government elected to intervene on certain allegations and causes of action contained in her Complaint. The government intervened only as to Counts I and II of Relator's Complaint and only to the extent that these counts involve defendants' submission of Medicare claims without first developing an appropriate plan of care or obtaining the required physician certifications and/or recertifications required by law. (Government's Compl. at ¶¶ 28-35.) The government also asserted common law claims for unjust enrichment, misrepresentation under Alabama Code § 6-5-101, and payment by mistake. (*Id.* at ¶¶ 36-50.)

4

As to Relator's Complaint, defendants argue that (1) the Complaint fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b); (2) Relator is barred from bringing her claims under Articles II and III of the United States Constitution; and (3) Relator did not adequately plead her conspiracy claim under 31 U.S.C. § 3729(a)(3) because she failed to allege a specific intent to defraud and an agreement among the parties allegedly involved.[4] As to the government's Complaint, defendants argue that (1) the Complaint (including both the FCA claims and the common law claims) fails to satisfy the particularity requirements of Rule 9(b); (2) the Complaint fails to adequately plead defendants' requisite state of mind; and (3) the

---

[4] Defendants also assert that the only proper defendants are (1) BHS, (2) Cullman Regional Medical Center, Inc., and (3) Walker Regional Medical Center, Inc. (*See* Defendants' Reply in Support of Motion to Dismiss ("Defs.' Reply") at 17.) Defendants further assert that the intracorporate conspiracy doctrine bars this claim because "the 'agreements' detailed on page[s] 35-36 of the Relator's Response all are illusory -- the Relator is actually describing alleged wrongdoing only by BHS," (*id.* at 17), and "to the extent that the Relator is alleging that the conspiracy has occurred within Baptist and its operating divisions, the law is clear that a corporation may not be found to conspire with itself or its agents," (Defs.' Mot. at 26).

Under the intracorporate conspiracy doctrine, "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000). Simply put, under this doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.*; *see also Dickerson v. Alachua County Commission*, 200 F.3d 761, 767 (11th Cir. 2000). Thus, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. *McAndrew,* 206 F.3d at 1036.

Relator asserts that "since the Complaint alleges activity by Defendants which each have separate corporate existences, these Defendants can (and did) conspire with each other," and, therefore, the intracorporate conspiracy doctrine does not apply. (Relator's Response in Opposition to Defendants' Motion to Dismiss Relator's Qui Tam Complaint ("Relator's Response") at 37.) Relator further argues that because the intracorporate conspiracy doctrine does not apply to criminal conspiracies, it should not apply in this case since the underlying conspiracy is criminal in nature. (*Id.*) Because the court must accept all of Relator's factual allegations as true in a Motion to Dismiss, including the Relator's allegations regarding the separate corporate existence of each named defendant, the court will not address these arguments in this Memorandum Opinion.

common law claims are barred by the applicable statute of limitations.

## II. DISCUSSION

### A.    The False Claims Act

#### 1.    Background

The FCA prohibits the making of false or fraudulent claims to the government for payment. *See e.g., United States ex rel. Williams v. NEC Corporation,* 931 F.2d 1493, 1496 (11th Cir. 1991). The purpose of the FCA is to recover money fraudulently taken from the government. *Id.* at 1497. "The Act was first passed by Congress in 1863, at the request of President Lincoln, in an effort to combat profiteering by Union Army suppliers during the Civil War." *Id.* at 1496-97. The *qui tam* provision of the FCA allows private persons ("relators") to bring suit under the Act, with a promise of a share of the damages recovered. *Id.* at 1497. Courts have observed that "the purpose of the *qui tam* provisions of the False Claims Act is to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward." *Id.* (citing *United States ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13, 18 (2d Cir. 1990) (quotation marks omitted). "By allowing certain private parties to sue on behalf of the government, the FCA creates a statutory exception to the general rule regarding standing to sue." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.,* 755 F. Supp. 1040, 1044 (S.D. Ga. 1990).

Congress amended the FCA in 1986 to encourage more private enforcement suits in combatting the rising problem of sophisticated and widespread fraud against the government. *See Williams,* 931 F.2d at 1497. Before the 1986 amendments, when the government elected to intervene in a *qui tam* action, the suit was conducted solely by the government. *See United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.,* 151 F.3d 1139, 1144 (9th Cir.

6

1998). The 1986 amendments allow the relator to continue as a party to the action after the government's intervention. *Id.* (citing 31 U.S.C. § 3730(c)(1)). Although the amendments increased the relator's role when the government intervenes, the government still has "primary responsibility" for the case and retains supervisory powers over the relator. *Id.*

The Act explicitly provides that when the government takes over the *qui tam* action from the start, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1). Though the relator "shall have the right to continue as a party," *id.*, the government may end the litigation or limit the participation of the relator in several ways. First, the government may dismiss the action "notwithstanding the objections of the person initiating the action" once the relator has received notice and an opportunity for a hearing on the dismissal motion. 31 U.S.C. § 3730(c)(2)(A). Second, the government may also settle with the defendant "notwithstanding the objections of the person initiating the action," but only if the court determines after a hearing "that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). Further, the government may request that the court impose appropriate limitations on the relator's participation if it shows that unrestricted participation "would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment." 31 U.S.C. § 3730(c)(2)(C). The Act also provides the defendant with an opportunity to request that the court limit the relator's participation, upon a showing that unrestricted participation "would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense." 31 U.S.C. § 3730(c)(2)(D).

The 1986 amendments also expanded the government's ability to intervene in a *qui tam* action. *Sequoia Orange Co.*, 151 F.3d at 1144. The government may move for an extension of

7

the original sixty-day period for deciding whether to intervene. 31 U.S.C. § 3730(b)(2) and (b)(3). Even after that period has expired, the government now has the right to track the litigation and to intervene at a later date upon a showing of good cause. 31 U.S.C. § 3730(c)(3). However, in permitting late intervention, the court may not limit "the status and rights" of the relator. (*Id.*)

When the government chooses not to take over a *qui tam* action, the relator "shall have the right to conduct the action." 31 U.S.C. § 3730(c)(3). Upon the government's request, however, the relator must serve the government with copies of all pleadings and deposition transcripts. (*Id.*) Whether or not the government takes over the action from the outset, it may ask the court to stay the relator's discovery for an extendable sixty-day period, upon a showing that the relator's discovery "would interfere with the government's investigation or prosecution of a criminal or civil matter arising out of the same facts." 31 U.S.C. § 3730(c)(4).

2.    *Relator's Standing*

Defendants contend that the Constitution bars and precludes the Relator from asserting claims to the extent that the government has chosen to intervene. (*See* defs.' Reply at 18-20.) The court disagrees.

In *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 120 S.Ct. 1858, 1861 (2000), the Supreme Court noted:

> If a relator initiates the FCA action, he must deliver a copy of the complaint, and any supporting evidence, to the Government, § 3730(b)(2), which then has 60 days to intervene in the action, §§ 3730(b)(2), (4). If it does so, it assumes primary responsibility for prosecuting the action, § 3730(c)(1), though the relator may continue to participate in the litigation and is entitled to a hearing before voluntary dismissal and to a court determination of reasonableness before settlement, § 3730(c)(2). If the Government declines to intervene within the 60-day period, the relator has the exclusive right to conduct the action, § 3730(b)(4), and the Government may subsequently intervene only on a showing

8

of "good cause," § 3730(c)(3).  The relator receives a share of any proceeds from the action--generally ranging from 15 to 25 percent if the Government intervenes (depending upon the relator's contribution to the prosecution), and from 25 to 30 percent if it does not (depending upon the court's assessment of what is reasonable)--plus attorney's fees and costs.  §§ 3730(d)(1)-(2).

Further, the court stated:

> [T]he statute gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery. Thus, it provides that "[a] person may bring a civil action for a violation of section 3729 *for the person and for the United States Government*," § 3730(b) (emphasis added); gives the relator "the right to continue as a party to the action" even when the Government itself has assumed "primary responsibility" for prosecuting it, § 3730(c)(1); entitles the relator to a hearing before the Government's voluntary dismissal of the suit, § 3730(c)(2)(A); and prohibits the Government from settling the suit over the relator's objection without a judicial determination of "fair[ness], adequa[cy] and reasonable[ness]," § 3730(c)(2)(B).

*Id.* at 1863 (emphasis in original).  The Eleventh Circuit has noted that the FCA's purpose is not limited to punishing the wrongs against the public, but the FCA also fills a remedial capacity in redressing injury to the individual relator. *See United States ex rel. Neher v. NEC Corp.,* 11 F.3d 136, 138 (11th Cir. 1993) ("We believe that a *qui tam* relator suffers substantial harm and the *qui tam* provisions of the FCA are intended to remedy that harm.")

As noted above, once the government intervenes in the lawsuit, the party bringing the action remains as a party to the litigation.  31 U.S.C. § 3730(c)(1).  The Act also makes clear that the relator retains an interest in the lawsuit and the relator is given "unrestricted participation" in the litigation, subject to a request for limitation by the government or the defendant on a showing of delay, interference, harassment, or undue burden. *See* 31 U.S.C. §§ 3730(c)(2)(C), 3730(c)(2)(D); *see also Ragsdale v. Rubbermaid, Inc*., 193 F.3d 1235, 1239 n.7 (11th Cir. 1999) ("with certain exceptions . . . , relators have unrestricted participation in the litigation").
Although the government has primary authority to prosecute the action and the relator is subject

9

to a number of controls, the relator still remains a party to the suit -- the government is simply not bound by any act of the relator. 31 U.S.C. § 3730(c)(1).

Thus, nothing in the FCA or the case law states that Relator's Complaint or claims must be dismissed because the government has intervened on those same claims. In fact, the FCA expressly provides that once the government intervenes, the relator "shall have the right to continue as a party to the action." *See* 31 U.S.C. § 3730(c)(1). In the present case, the government has not objected to or sought to limit Relator's role in the litigation. Moreover, defendants have not shown that unrestricted participation would be for purposes of harassment or would cause defendants undue burden or unnecessary expense under 31 U.S.C. § 3730(c)(2)(D). Thus, Relator remains as a party as to the claims on which the government has intervened, and defendants' Motion to Dismiss as to these claims is due to be denied.

      3.     *Take Care Clause and Appointments Clause*

Defendants further assert that the Relator's claims for which the government decided not to intervene must also be dismissed. (*See* Defs.' Mot. at 20-22; *see also* Defs.' Reply at 18-21.) Defendants assert that application of the *qui tam* provisions of the FCA violate the Take Care Clause and the Appointments Clause under the doctrine of separation of powers. (*Id.*) The court disagrees.

In *Stevens*, the United States Supreme Court expressly declined to address whether *qui tam* suits violate Article II, specifically the Appointments Clause of § 2 and the Take Care Clause of § 3. *See Stevens,* 120 S. Ct at 1865 n.8. However, this issue has been discussed extensively in two different Circuit court opinions. In *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 749-59 (9th Cir. 1993), the court concluded that the *qui tam* provisions of the FCA are constitutional. The Fifth Circuit, in a split decision, came to the contrary conclusion. *See*

*Riley v. St. Luke's Episcopal Hosp.,* 196 F.3d 514, 523-31 (5th Cir. 1999).[5] Further, the Second

Circuit, in a much shorter discussion, found the *qui tam* provisions constitutional, *see United*

*States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1154-55 (2d

Cir. 1993), as did the Sixth Circuit in *United States ex rel. Taxpayers Against Fraud v. Geberal*

*Electric Co.,* 41 F.3d 1032, 1041-42 (6th Cir. 1994). Numerous district courts have also found

the *qui tam* provisions constitutional under the Take Care Clause and the Appointments Clause.

*See, e.g., United States ex rel. Phillips v. Pediatric Services of America, Inc.,* 123 F. Supp. 2d

990, 992-94 (W.D. N.C. 2000); *United States ex rel. Downy v. Corning, Inc.,* 118 F. Supp. 2d

1160, 1167-68 (D. N.M. 2000); *United States ex rel. Thompson v. Columbia/HCA Healthcare*

*Corp.,* 20 F. Supp. 2d 1017, 1044-46 (S.D. TX 1998). As noted by the United States Supreme

Court:

> [There is a] long tradition of *qui tam* actions in England and the American
> colonies. That history is particularly relevant to the constitutional standing
> inquiry since, as we have said elsewhere, Article III's restriction of the judicial
> power to "Cases" and "Controversies" is properly understood to mean "cases and
> controversies of the sort traditionally amenable to, and resolved by, the judicial
> process."

*Stevens,* 120 S.Ct. at 1863.

The court agrees with the reasoning and conclusions of the courts in *Kelly, Kreindler,* and

*Geberal,* and is of the opinion that the *qui tam* provisions of the FCA do not contradict either the

Take Care Clause or the Appointments Clause. As to the Take Care Clause, the Executive

Branch retains sufficient control[6] over the relator's conduct so as not to "impermissibly

---

[5] Rehearing en banc has been granted in *Riley. Riley v. St. Luke's Episcopal Hosp.,* 196 F.3d 561 (5th Cir. 1999).

[6] As noted above, upon intervening, the government has primary responsibility for prosecuting the action. 31 U.S.C. § 3730(c)(1). Even if the government decides against

undermine" the powers of the Executive Branch or disrupt the proper balance between the coordinate branches by preventing the Executive Branch from accomplishing its constitutionally assigned function to take care that the laws be faithfully executed. *See Morrison v. Olson,* 487 U.S. 654, 696 (1988) (The court must determine "whether the Act, taken as a whole, violates the principle of separation of powers by unduly interfering with the role of the Executive Branch. Time and again we have reaffirmed the importance in our constitutional scheme of the separation of governmental powers into the three coordinate branches. . . . As we [have previously] stated . . . , the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as 'a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.' We have not hesitated to invalidate provisions of law which violate this principle.") (citations and quotations imitted); *see also* U.S. Constitution Art. II, § 3. Similarly, the *qui tam* provisions of the FCA do not violate the Appointments Clause of the Constitution, Article II, § 2 cl. 2. Although a relator may sue in the government's name, the relator is not vested with governmental power. Indeed, as noted above, the government may take complete control of the case if it wishes. Furthermore, the relator's "position is without tenure, duration, continuing emolument, or continuous duties," and a relator is not an "officer" within the meaning of the Appointments Clause. *See Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890) (finding that the merchant appraiser position did not offend

---

intervening in the relator's case, it may still require the relator to inform it of developments and to forward copies of the claims, the material evidence and information, and copies of depositions taken. 31 U.S.C. § 3730(c)(3). In fact, after turning down the opportunity to intervene, the government may still intervene later upon a showing of good cause. *Id*. Similarly, when the government chooses to intervene, it may move to have the relator's litigation role significantly restricted, even as it may conduct settlement talks or even decide that the case should be dismissed. 31 U.S.C. § 3730(c)(2)(A), (B), and (C).

the Appointments Clause, U.S. Const. Art. 2, § 2, because the position is without tenure, duration, continuing emolument, or continuous duties, and [the individual holding the position] acts only occasionally and temporarily, [and [t]herefore, [the merchant appraiser] is not an 'officer,' within the meaning of the [Appointments Clause].") The FCA *qui tam* provisions provide no threat to the interest of a balanced government which underlies both the Appointments Clause and the Take Care Clause. The court is of the opinion that the *qui tam* provisions of the FCA do not violate the Take Care Clause or the Appointments Clause, nor do these provisions offend the doctrine of separation of powers.

### 4.    *Particularity Requirements of Rule 9(b)*

Defendants assert that both the government's Complaint and Relator's Complaint fail to provide defendants with the particularity of their claims as required by Rule 9(b). (*See* defs.' Mot. at 6-15, 22-26; *see also* defs.' Reply at 1-15.) Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." It is well-settled in this and other circuits that Federal Rule of Civil Procedure 9(b) applies to cases involving the FCA.[7] *See, e.g., Cooper,* 19 F.3d at

---

[7] The cases addressing the sufficiency under Rule 9(b) of *qui tam* complaints alleging FCA claims for Medicare and Medicaid fraud are not in total accord. *Compare United States v. Gericare Medical Supply, Inc.,* 2000 WL 33156443, at * 7-8 (S.D. Ala. Dec. 11, 2000) (concluding that exact date on which each allegedly false claim was submitted and specific individual(s) that physically completed the forms are not necessary to satisfy Rule 9(b); *Downy,* 118 F.Supp.2d at 1172-73 (finding that the relator's complaint satisfied the requirements of Rule 9(b), even without specific examples of false claims submitted to the United States because information concerning the alleged fraud was undoubtedly in defendants' possession rather than the public domain.); *United States v. NHC Healthcare Corp.,* 115 F. Supp. 2d 1149, 1151-52 (W.D. Mo. 2000) ("when an underlying fraudulent activity is alleged to have occurred systematically and continuously over a period of time, it is sufficient to allege a general time frame of the fraud in question;" although details were left out of the Complaint such as what specific services were not provided, the court noted that "this type of more specific information is likely not in the possession of the Plaintiff at this time and is more properly brought to light in

discovery;" Rule 9(b) was "never meant to require a plaintiff to set forth every factual detail supporting its claim, nor was it meant to fuse the stages of pretrial investigation and discovery"); *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 207-08 (E. D. Tex.1998) ("A plaintiff cannot be expected to have personal knowledge of the details of corporate internal affairs," including who physically completed the false forms.); *United States ex rel. Pogue v. American Healthcorp., Inc.*, 977 F. Supp. 1329, 1332-33 (M.D. Tenn. 1997) (finding *qui tam* complaint sufficient where it generally described fraudulent scheme to submit false Medicare and Medicaid claims, even without identification of any specific dates of claims or specific employees involved; the court also noted that requiring plaintiffs to refer to the specific instances underlying each Medicare and Medicaid claim submission alleged to be fraudulent in the complaint would undermine Rule 8's admonishment to keep pleadings simplistic); *United States ex rel. Sanders v. East Alabama Healthcare Authority,* 953 F.Supp. 1404, 1413-14 (M.D. Ala. 1996) (noting that the particularity requirements of Rule 9(b) "may be relaxed somewhat if the defendant controls information required for proper pleading," and finding some of plaintiff's FCA allegations sufficient under the relaxed standard of Rule 9(b)) *with United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.,* 232 F.3d 902 (Table), 2000 WL 159576, at *5 (10th Cir. 2000) (unpublished decision) (finding that the amended complaint failed to satisfy Rule 9(b) because plaintiff did not identify specific individuals responsible for the alleged fraud, the time when a false or fraudulent claim was presented, or the particular time or place when the plan resulted in the submission of a false or fraudulent claim); *United States ex rel. Harris v. George Washington Primary Care,* 203 F.3d 53 (Table), 1999 WL 1021936, at *1 (D.C. Cir. 1999) (unpublished opinion) (finding that the complaint failed to plead the time, place, or content of alleged false misrepresentation and failed to specifically state the alleged illegal gain; the court refused to accept the contention that a modified Rule 9(b) standard should be applied to *qui tam* actions); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997) (finding that because the relator provided no factual basis for his belief that defendants engaged in fraudulent activity other than his reference to statistical studies that did not directly implicate defendants, the relator's allegations amounted to nothing more than speculation, and failed to satisfy Rule 9(b).); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 568 (11th Cir. 1994) (noting that the "complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them," and concluding that the complaint failed to satisfy Rule 9(b) where the plaintiff "made general conclusory allegations of fraud"); *United States ex rel. Clausen v. Laboratory Corp. of America,* 198 F.R.D. 560, 562-63 (N.D. Ga. 2000) (finding the complaint insufficient under Rule 9(b) where plaintiff alleged no specific facts in support of general allegation that defendant submitted false claims, plaintiff failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes, and plaintiff failed to specify the time of submission with particularity); *United States ex rel. Butler v. Magellan Health Services, Inc.,* 101 F. Supp. 2d 1365, 1369-70 (M.D. Fla. 2000) (finding complaint insufficient under Rule 9(b) where plaintiff merely alleged a scheme of fraud, and not specific occurrences or facts which support this general scheme); *United States ex rel. Walsh v. Eastman Kodak Co.,* 98 F. Supp. 2d 141, 147 (D. Mass. 2000) ("Without citing a single false claim arising from an allegedly false invoice, Relator has not met even a bare-bones Rule 9(b) test."); *United States ex rel. Lacorte v. Smithkline*

14

568; *Clausen,* 198 F.R.D. at 562.

As noted above, under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[8] Fed. R. Civ. P. 9(b). Pleading fraud with particularity is necessary for the following reasons: (1) it provides the defendants with sufficient notice of the acts about which the plaintiff complains to enable them to frame a response; (2) it prevents "fishing expeditions" to uncover wrongdoing; and (3) it protects defendants from unfounded accusations of immoral and otherwise wrongful conduct. *Butler,* 101 F. Supp. 2d at 1368. The Eleventh Circuit has stated:

> Rule 9(b) may be satisfied if the complaint sets forth:
> (1)   precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2)   the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3)   the content of such statements and the manner in which they misled the plaintiff, and
> (4)   what the defendants obtained as a consequence of the fraud.
> . . . However, alternative means are also available to satisfy the rule.

*Brooks,* 116 F.3d at 1371 (quotations and citations omitted); *see also Durham v. Business*

---

*Beecham Clinical Laboratories, Inc.,* 2000 WL 17838, at **3-5 (E.D. La. Jan. 10, 2000) (finding complaint insufficient under Rule 9(b) where plaintiff failed to plead with particularity how the scheme allegedly perpetrated by defendants was fraudulent and the who, where, and when of the alleged fraud.); *State of California ex rel. Mueller v. Walgreen Corp.,* 175 F.R.D. 631, 634-36 (N.D. Cal. 1997) (finding that the complaint was insufficient under Rule 9(b) where plaintiff failed to provide any specific examples or particular instances of wrongdoing by the defendant). *Stinson,* 755 F. Supp. at 1053 (finding that plaintiff failed to satisfy Rule 9(b) because the complaint only served one of Rule 9(b)'s purposes – it put defendants on notice of the complained of conduct. However, the lack of any factual basis to connect defendants to the scheme plaintiff constructed did not ensure that the suit was not frivolous. Nor did the lack of factual basis for the complaint ensure that defendant's "reputation and goodwill" will remain protected.).

    [8] Knowledge may be pleaded generally and is not subject to the particularity requirements of Rule 9(b). Fed. R. Civ. P. 9(b); *see also Gericare,* 2000 WL 33156443, at *9.

*Management Associates,* 847 F.2d 1505, 1512 (11th Cir. 1988) ("Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule.").

However, a number have courts have concluded that where the fraud occurred over an extended period of time and consisted of numerous acts, the specificity requirements are applied less stringently. *See, e.g., Clausen,* 198 F.R.D. at 562. The heightened pleading standard may also be relaxed if the factual information that is the basis of the claim is peculiarly within the defendant's knowledge or control. *See, e.g., Id.*; *Stinson,* 755 F. Supp. at 1052. Further,

> [P]leadings generally cannot be based on information and belief. . . . Where, however, [the] factual information is peculiarly within the defendant's knowledge or control, rule 9(b)'s requirement is relaxed somewhat. . . . In such a case, pleading on information and belief is acceptable, . . . but on one condition: the complainant must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.

*Stinson,* 755 F. Supp. at 1052. Moreover, where widespread fraud is alleged, "courts will adhere to a relaxed standard," but "only when the plaintiff alleges that the 'necessary information lies within the defendant's control' and includes a 'statement of facts upon which the allegations are based.'" *Butler,* 101 F. Supp. 2d at 1368 (quoting *Stinson,* 755 F.Supp. at 1052).

A relaxation of the heightened pleading standard does not relieve plaintiff from all particularity in pleading. *See Butler,* 101 F. Supp. 2d at 1369. The facts alleged must amount to more than the mere suspicion that a fraud may have occurred, and plaintiff must be able to connect the allegations of fraud to the defendant. *Stinson,* 755 F. Supp. at 1052 (citations and quotations omitted). Bald or conclusory allegations will not suffice. *Id.* Plaintiff must still adduce facts "specific supporting a strong inference of fraud or the complaint will not satisfy even a relaxed pleading standard." *Id.*

16

a.    Relator's Complaint

Defendants allege that all of Relator's claims fail to meet the particularity requirements of Rule 9(b) because many of her allegations are "curiously dependent on rumor, hearsay, and speculation," many allegations are based upon "information and belief," which defendants allege does not satisfy Rule 9(b), and many allegations demonstrate Relator's "lack of personal knowledge about the alleged wrongdoings by explicitly noting that her information [is] second-hand, from the hearsay testimony of others." (Defs.' Mot. at 22-23.) Defendants also contend:

> Relator's complaint shows no allegations against Cullman Regional Medical Center, a facility with which the Relator had absolutely no connection. Her only allegation against Cullman with any semblance of specificity is found in paragraph 31 . . . [and is based on] an ambiguous hearsay assertion from someone who is not even claimed to work at Cullman.

(*Id.* at 24-25.) Further, defendants contend that "Relator's claims based on operations at the Citizens facility are not much stronger, stemming primarily from assertions in paragraph 30 about the use of outdated billing codes," and are lacking in details. (*Id.* at 25.)

Relator alleges the she "has filed a lengthy and detailed complaint – over 30 pages and 40 enumerated paragraphs long – which provides the Defendants with ample notice of the precise nature of the allegations to enable [them] to respond appropriately and to proceed with discovery." (Relator's Response at 8.) Relator also contends that the allegations in her Complaint are "certainly not based upon 'unbridled speculation,' but upon her personal observations and interactions with others (including patients), her review of specifically identified documents and over 500 . . . patient medical records, and from the statements made to her by Defendants' agents and numerous employees." (*Id.* at 9.) Further, Relator contends that "there is nothing improper about relying upon hearsay . . . , particularly when the statements constitute admissions by the Defendants' agents, or are made by individuals who themselves

17

may have personal knowledge." (*Id.*)

The court notes that the challenged conduct involved many transactions, many different employees, and occurred over a considerable period of time. A detailed description of every alleged occurrence is practically impossible. The court is of the opinion that, under Counts I and II, Relator has plead with sufficient particularity the following claims with respect to defendants Coosa Valley Baptist Medical Center, Coosa Valley Home Health, and BHS (1) patients were seen by unlicensed and unsupervised service providers in violation of the Medicare and Medicaid regulations, (Relator's Compl. at ¶¶ 13-14); (2) patient medical records and forms contained incomplete, inaccurate, and fraudulent documentation when submitted for Medicare and Medicaid reimbursement, (*id.* at ¶¶15-18); and (3) patient medical records and forms contained incomplete, inaccurate, and fraudulent documentation to support re-certification and medical necessity for additional treatment and services, (*id.* at ¶¶ 19-23). As to these claims, Relator has provided the names of many of the employees involved, the names of many of the patients involved, the alleged misconduct and wrongdoing involved, and the essence of how the schemes were carried out. Thus, as to these claims, the court is of the opinion that Relator has sufficiently identified the circumstances of the challenged conduct to place defendants on notice of the claims against them so that they can prepare a defense. Relator has also provided a factual basis for her belief that these defendants violated Medicare and Medicaid regulations which adequately apprises defendants of the nature and scope of her allegations. Further, the factual basis adequately connects defendants to allegedly fraudulent schemes so as to ensure that the suit is not frivolous and ensures that defendant's "reputation and goodwill" will not be unduly harmed. Thus, defendants' Motion to Dismiss is due to be denied as to the claims against Coosa Valley Baptist Medical Center, Coosa Valley Home Health, and BHS regarding the provision of

18

unlicensed and unsupervised service providers; incomplete, inaccurate, and fraudulent

documentation on forms submitted to Medicare and Medicaid; and improper re-certification and

additional treatment (as described in paragraphs thirteen through twenty-three of Relator's

Complaint).

All claims against defendants Citizens Baptist Medical Center and Cullman Regional

Medical Center are insufficient under Fed. R. Civ. P. 9(b).  Relator's claim against Citizens

Baptist Medical Center for fraudulent Medicare and Medicaid laboratory billing is "based on

statements *alluding to* fraudulent billing practices at the Citizens clinical laboratory made by

George Ruff (the newly-appointed corporate compliance attorney) on November 4, 1997."

(Relator's Compl. at ¶ 29) (emphasis added.)  Further, this allegation does not sufficiently

identify the circumstances surrounding the challenged conduct.  Because Relator's entire

allegation is based on a discussion "alluding to" fraudulent billing practices and is devoid of any

details supporting such allegation, it fails to satisfy even the relaxed particularity requirements of

Rule 9(b).

Relator's claims against Citizens Baptist Medical Center[9] for other fraudulent billing

practices stem from "gross inconsistencies and a lack of uniformity in the Chargemaster

structure," which Relator discovered when she was assigned to review and analyze the charging

and billing system for Citizens Baptist Medical Center, Coosa Valley Baptist Medical Center,

and other unnamed institutions.  (Relator's Compl. at  ¶ 30.)  Relator alleges that BHS, through

these institutions, was "using antiquated codes that were no longer recognized by HCFA, was

billing for procedures that were no longer recognized by HCFA, and was charging various rates

---

[9] As noted below, Relator makes these same allegations of fraudulent billing practices as
to defendant Coosa Valley Baptist Medical Center.   (*See* Relator's Compl. at  ¶ 30.)

for identical services provided to inpatients and outpatients, in violation of Medicare/Medicaid regulations." (*Id.*) Relator further alleges that these "practices resulted in higher-than-authorized reimbursements from Medicare/Medicaid and higher-than-accurate hospital cost reports." (*Id.*) As to defendant Cullman Regional Baptist Medical Center, Relator merely alleges that "[d]uring a review of the billing systems, Relator was told by Ms. Becky Miller (Corporate Director of Business Office Services for Defendant Baptist Health) that this problem was widespread and that the worst problem existed at Defendant Cullman Regional." (*Id.* at ¶ 31.)

The court is of the opinion that Relator has failed to allege sufficient detail supporting these allegations. Relator makes no mention of the services, codes, or procedures allegedly involved. Further, Relator makes no mention of the patients or claims affected by the allegedly fraudulent practice. Relator also fails to mention the period of time for which she reviewed the charging and billing system. Finally, Relator's claim against Cullman Regional Medical Center for fraudulent billing practices is based entirely on hearsay and is completely devoid of specific facts. For the reasons noted above, the court is of the opinion that Relator has failed to provide sufficient particularity under Rule 9(b) as to her claims against defendants Cullman Regional Baptist Medical Center and Citizens Baptist Medical Center for fraudulent billing practices, (Relator's Compl. at ¶¶ 29-31). As to the claims against these defendants, Relator has merely alleged a scheme of fraud, and no specific occurrences or facts which support this general scheme. Further, Relator has failed to adduce specific facts supporting a strong inference of fraud committed by these defendants, and Relator has failed to provide these defendants with sufficient notice of these allegedly fraudulent acts about which she complains. Thus, defendants' Motion to Dismiss is due to granted as to the claims against defendants Citizens

20

Baptist Medical Center for fraudulent laboratory billing and fraudulent billing practices and against Cullman Regional Baptist Medical Center for fraudulent billing practices.

Relator's claims against Coosa Valley Baptist Medical Center regarding failure to collect co-payments and deductibles, (Relator's Compl. at ¶ 24); failure to take appropriate remedial measures, (*id.* at ¶¶ 25-26); the "72 hour rule," (*id.* at ¶¶ 27-28); and fraudulent billing practices,[10] (*id.* at ¶ 30); and against Coosa Valley Home Health for failure to collect co-payments and deductibles, (*id.* at ¶ 24); and failure to take appropriate remedial measures, (*id.* at ¶¶ 25-26), are not sufficient under Fed. R. Civ. P. 9(b). These claims appear to be based on rumor and speculation. Relator has failed to provide sufficient, if any, details regarding how these allegedly fraudulent acts occurred and who engaged in them. As to these claims, Relator has merely alleged general fraudulent schemes, and no specific occurrences or facts supporting these schemes. Further, with regard to these allegations, Relator has failed to adduce specific facts supporting a strong inference of fraud, and Relator has failed to provide defendants with sufficient notice regarding these allegedly fraudulent acts. Thus, defendants' Motion to Dismiss is due to be granted as to the claims against Coosa Valley Baptist Medical Center for failure to collect co-payments and deductibles, failure to take appropriate remedial measures, violations of the "72 hour rule," and fraudulent billing practices, and against Coosa Valley Home Health for failure to collect co-payments and deductibles and failure to take appropriate remedial measures.

---

[10] Relator makes the same allegations regarding fraudulent billing practices against Coosa Valley Baptist Medical Center that she made against Citizens Baptist Medical Center. (See Relator's Compl. at ¶ 30.) These claims are due to be dismissed as against Coosa Valley Baptist Medical Center for the same reasons they are due to be dismissed as against Citizens Baptist Medical Center.

As to Relator's Conspiracy Claim in Count III, defendants assert that Relator's conspiracy pleadings failed to provide the specificity required under the FCA because the FCA "seems to require the specific intent to defraud." (defs.' Mot. at 26 (quoting *United States ex rel. Johnson v. Shell,* 183 F.R.D. 204, 209 (E.D. Tex. 1998).)   Defendants also assert that "[a]nother failing of Count III is the absence of any allegation of any agreement among the parties allegedly involved in this conspiracy." (*Id.*)

Relator contends that even if the court concludes that she is required to show specific intent to defraud, her Complaint "meets this heightened pleading requirement, since her Complaint establishes that the Defendants acted with the specific intent to submit false and fraudulent claims for reimbursement to the government." (Relator's Response at 33.)   Further, Relator asserts that she has alleged the following agreements: (1) an agreement between representatives of defendants Coosa Valley Baptist Medical Center and Citizens Baptist Medical Center (through Nancy Ellis and Katie Powell) to supply missing information on patient forms in order to improperly obtain Medicare and Medicaid reimbursements; (2) an agreement between defendants Coosa Valley Baptist Medical Center and Citizens Baptist Medical Center (through Nancy Ellis and Katie Powell) to create an internal document entitled "Outpatient Billing Information" to support the submission of fraudulent Medicare and Medicaid reimbursement claims; (3) an agreement between representatives of defendants Coosa Valley Home Health and Citizens Baptist Medical Center (through Theresa Jackson, Margaret Hamm, Connie Bowen, and Julie Tidwell) to obtain Medicare and Medicaid reimbursements from rehabilitative services for patients which were no longer medically necessary; (4) an agreement between representatives of defendants Coosa Valley Home Health, Citizens Baptist Medical Center, and Coosa Valley Baptist Medical Center (through Theresa Jackson, Margaret Hamm, and Nancy Ellis) to continue

22

to treat patients who no longer required treatment simply because it was profitable; and (5) an agreement between representatives of defendants Coosa Valley Baptist Medical Center, Coosa Valley Home Health, and Citizens Baptist Medical Center (through Steven Johnson, Mary Tienney, Christie Brewer, and Nancy Ellis) to conceal from the government the fraudulent practices that were occurring at these institutions so as not to jeopardize a pending business transaction. (*See* Relator's Response at 34-37 (citing Relator's Compl. at ¶¶ 16, 17, 19, 20, 26).) Upon review of Relator's Complaint, the court disagrees with Relator's assertion that she has adequately alleged the agreements recited above.

To satisfy the elements of a conspiracy to defraud claim under 31 U.S.C. § 3729(a)(3) of the FCA, a plaintiff is required to demonstrate that: (1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) the United States has suffered damages as a result of the false or fraudulent claim. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.,* 721 F. Supp. 1247, 1259 (S.D. Fla. 1989). The majority view is that Rule 9(b) applies to conspiracies under the FCA as well as to substantive violations. *See Gericare,* 2000 WL 33156443, at *9 (collecting cases). "The essence of a conspiracy under the Act is an agreement between two or more persons to commit a fraud." *Stinson,* 721 F. Supp at 1259. However, "[w]hile intent to defraud apparently is an element of a conspiracy claim under the FCA, intent is a mental state that may be pleaded generally, Fed. R. Civ. P. 9(b)." *Gericare,* 2000 WL 33156443, at * 10 (citing *Johnson* 183 F.R.D. at 206). As noted by the court in *Johnson,* "a plaintiff cannot be expected to have personal knowledge of the details of corporate internal affairs," including who physically completed the false forms." *Johnson,* 183 F.R.D. at 206.

23

Relator has failed to allege an agreement with a sufficient degree of particularity. The paragraphs cited by Relator merely assert that allegedly fraudulent practices were being undertaken; that upper management knew of, encouraged, and commanded such practices; and that these practices were overlooked because of their profitability.[11]   Relator's Complaint is devoid of any allegations of an agreement to defraud. Even if Relator's Complaint is viewed as alluding to an agreement between employees, it does not allege the particulars of who exactly entered into the conspiracy or how and when the conspiracy arose. In fact, Relator merely alleges in her conspiracy count that the defendants named in her Complaint "conspired with numerous individuals and entities identified within this Complaint to defraud the Government by getting false or fraudulent claims allowed or paid and by getting improper per diem payments to Defendants in violation of 31 U.S.C. §§ 3729(a)(1) and (a)(2), all in violation of 31 U.S.C. §

---

[11]   Paragraph sixteen merely alleges that Relator and others were ordered to supply "missing" information in order to obtain Medicare and Medicaid reimbursement and in an effort to conceal violations of Medicare and Medicaid regulations. (*See* Relator's Compl. at ¶ 16.) Paragraph seventeen merely alleges that Relator and others were ordered to complete allegedly fraudulent forms to submit to Medicare and Medicaid for reimbursement. (*See id.* at ¶ 17.) Paragraph nineteen merely alleges that hospital administrators "ordered unqualified individuals to complete the necessary documentation to recertify patients and to order additional physical therapy, skilled nursing, and other rehabilitation treatments after Relator had decertified or discharged said patients," and that certain employees "put pressure on various PTA's . . . to provide treatment to patients which would be submitted for Medicare/Medicaid reimbursement, even though Relator and other physical therapists had decertified said patients." (*See id.* at ¶ 19.) Paragraph twenty alleges defendants continued to order services that were no longer medically necessary, that certain administrators and nurses, who were not licensed, overruled Relator's decertifications because of the "need to keep the referring physician and patient's family happy" in order to continue "get[ting] additional referrals," that if patients were decertified, defendants "were not going to make any money" and would have to "lay off" employees, that these improper practices should be overlooked because of their profitability, and that administrators encouraged employees to perform services that were no longer medically necessary. (*See id.* at ¶ 20.) Paragraph twenty-six alleges that directors, including Relator, who tried to correct these allegedly fraudulent practices were ignored and ultimately resigned or were fired. (*See id.* at ¶ 26.)

3729(a)(3). (Relator's Compl. at ¶ 41.) Because Relator's Complaint lacks sufficient allegations to support an agreement to defraud the government, Relator's claim for conspiracy is due to be dismissed. *See United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,* 2000 WL 1207162, at \* 11-12 (E.D. Pa. Aug. 24, 2000) (dismissing conspiracy claims against defendants because plaintiff failed to allege an illegal or fraudulent agreement); *United States ex rel. Capella v. Norden Systems, Inc.,* 2000 WL 1336487, at \* 11 (D. Conn. Aug 24, 2000) (holding that general and conclusory allegations of conspiracy do not meet the particularity requirements of Rule 9(b) where the complaint did "not specify the particulars of how and when [the] alleged conspiracy arose, who entered into it, or what act was committed in furtherance of the conspiracy"); *Sanders,* 953 F. Supp. at 1410 (Conspiracy claim due to be dismissed for failure to state a claim because plaintiff failed to allege an agreement among the parties allegedly involved in the conspiracy); *Wilkins ex rel. United States v. Ohio,* 885 F. Supp. 1055, 1063 (S. D. Ohio 1995) (Plaintiff failed to establish a claim for conspiracy where plaintiff alleged in "conclusory terms that the defendants conspired to defraud the United States," but failed to plead any "facts showing the existence of an agreement between two or more of the defendants to defraud the government."); *Stinson,* 721 F. Supp at 1259 (dismissing conspiracy claim because plaintiff's complaint was "void of any allegations of an agreement and thus fail[ed] to state a claim under section 3729(a)(3)"). Thus, defendants' Motion to Dismiss is due to be granted as to Relator's conspiracy claim.

b.     The Government's Complaint

Defendants assert that the government omitted the particulars regarding any claim submitted for reimbursement, the process used to prepare and send those claims, and the procedures employed in preparing and submitting those claims. (Defs.' Reply at 4.) Defendants

25

also point out that there are no details regarding how the claims are reviewed, analyzed, and

relied upon by the government or its fiscal intermediaries. (*Id.*) Defendants assert:

> Even the Government's allegations about errors in the patient files are nebulous
> and confusing. Its claim of fraud is premised on an extrapolated "error rate"
> purportedly arising from data in some patient files. As found in Exhibit 1 to its
> complaint, the Government claims not just one kind of error, but several
> completely different sorts of alleged problems that all contribute to the
> Government's "error rate."

(*Id.*) Therefore, defendants contend that the government's Complaint fails under Rule 9(b)

because the government

> does not try to explain how such errors occurred or who committed them or
> whether they were the result of a state of mind sufficient to trigger liability under
> the FCA. No details about the kinds of fraud are provided, and there is no
> explanation that these unspecified problems can be lumped together to form an
> "error rate" of any significance. Nor does the Addendum to Exhibit 1 help. Even
> if the data in that Addendum could be readily deciphered, the Government has
> made no effort to explain how those data correct the ambiguities of Exhibit 1.

(*Id.* at 5.)[12]

The government contends that "the complaint and exhibits go into detail to identify the

type of claims at issue; the statutes and regulations which deal most relevantly with those claims;

---

[12] Defendants further contend that the government makes no allegations regarding the
requisite state of mind. (*See* Defs.' Mot. at 12-14.) Defendants allege that "there must be both
pleading and proof of knowing misconduct." (*Id.* at 13.) The knowledge requirement under the
FCA is defined as either "actual knowledge of the information" or "deliberate ignorance of the
truth or falsity of the information" or "reckless disregard of the truth or falsity of the
information." *See* 31 U.S.C. § 3729(b). Further, Rule 9(b) explicitly states that intent and
knowledge may be averred generally. Fed. R. Civ. P. 9(b). Thus, allegations regarding
knowledge are not subject to the particularity requirements of Rule 9(b). The government
alleged in its Complaint that defendants "knowingly presented . . . false claims and certifications
to Medicare," defendants "knew that these claims were false, fraudulent or fictitious, were
deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of the
truth of [these] claims," and defendants "knowingly made, used, or caused to be made or used,
false records or statements to get false or fraudulent claims allowed or paid to defendants by the
Medicare program." (Government's Compl. at ¶¶ 26, 29, 33.) Thus, defendants' argument that
the government failed to plead the requisite state of mind is without merit.

and the fact that defendants wrongfully certified in submitting those claims that the requirements

of physician certification, re-certification, and plan of care as set forth in the identified

regulations had been complied with when, in fact, such certifications were false in a large

percentage of the claims reviewed." (Government's Response at 2.) The government further

notes:

> In "Exhibit 1" attached to the complaint, and the subsequent "Addendum to
> Exhibit 1" which was filed under seal, the United States has specifically identified
> the patient files which it reviewed prior to making its election to intervene. Not
> only does that exhibit and addendum specifically show the problems and issues
> related to each of the specific patient files and claims reviewed, but the complaint
> specifically identifies which requirements as set out in 42 C.F.R. §§ 410.61,
> 424.24, and 424.11 were not complied with by defendants in submitting each of
> those claims (see paragraphs 14, 15, 16, 17, 18, 19, and 22 of complaint).

(*Id.* at 3.) Finally, the government notes:

> To identify each such claim, the patient records must be reviewed. Those records
> are in the exclusive possession of the defendants and would have required the
> United States to subpoena thousands of patient files at the start of its investigation
> and before the United States had even determined there was any merit to the
> relator's allegations. . . . Rule 9(b) was never intended to place such an arbitrary
> and unreasonable requirement on either the United States or the defendants.

(*Id.* at 3-4.)

The court agrees with the government's assertions. The government referenced 305

claims in Exhibit 1 and Addendum to Exhibit 1 which specifically identify the patient files and

the specific problems with each file. (*See* Government's Compl. at ¶ 21, Ex. 1 attached thereto,

and Addendum to Ex. 1 filed under seal on April 25, 2000; *see also* government's Response at 3

n.1.) The government has sufficiently identified the circumstances of the challenged conduct to

place defendants on notice of the claims against them so that they can prepare a defense. The

government has also provided a factual basis for its belief that defendants violated the Medicare

regulations which adequately apprises defendants of the nature and scope of its allegations.

27

Thus, the court is of the opinion that the government has plead its claims with sufficient

particularity under Rule 9(b). Thus, defendants' Motion to Dismiss as to the government's

claims under the FCA is due to be denied.[13]

## B.    The Government's Common Law Claims

Defendants assert that Rule 9(b) applies to the government's common law claims and

that these claims are barred by the applicable statute of limitations. (Defs.' Mot. at 14-16; *see*

*also* Defs.' Reply at 16.) The court disagrees.

### 1.    Rule 9(b)

The court is of the opinion that the government's claims for unjust enrichment and

payment by mistake have been adequately plead. "By its terms, Rule 9(b) extends to assertions

of 'mistake,' but its applicability to claims of unjust enrichment is less clear. It appears to be the

rule that a claim for unjust enrichment is subject to Rule 9(b) only if it is 'premised on fraud.'"

*Gericare,* 2000 WL 33156443 at *10 (quoting *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414

(S.D.N.Y. 1998); *Ramapo Land Co. v. Consolidated Rail Corp.*, 918 F. Supp. 123, 128

(S.D.N.Y. 1996); *Krieger v. Gast*, 2000 WL 288442, at *6 (W.D. Mich. 2000)). Further "[wh]ile

the plaintiff may establish unjust enrichment if the defendants obtained monies by fraud, it

presumably may establish unjust enrichment even if the defendants obtained such monies

innocently." *Gericare,* 2000 WL 33156443 at *10 (citing *United States v. Mead*, 426 F.2d 118,

125 n.6 (9th Cir. 1970) ("Knowledge of falsity is not a requisite for recovery under the mistake

doctrine.")). However, the court is of the opinion that the government's common law claims are

---

[13] This does not include claims against defendant Cherokee Baptist Medical Center. As
noted above, the government failed to obtain records from this defendant, and, accordingly, all
claims against Cherokee Baptist Medical Center are due to be dismissed.

sufficient even under the heightened pleading standard of Rule 9(b). As the claims for unjust enrichment and payment by mistake are alternative theories of liability for the fraud claims alleged under the FCA, these claims are sufficient for the same reasons that the FCA claims are sufficient.

### 2. *Statute of Limitations*

The court is also of the opinion that the common law claims are not barred by the applicable statute of limitations. Defendants argue that the two-year statute of limitations under Alabama Code § 6-2-38 applies, and that the statute of limitations began to run when Relator filed her complaint. (*See* Motion to Dismiss at 15-16; Defs' Reply at 16-17.) However, under the United States Code, claims by the United States based on contract must be filed "within six years after the right of action accrues," 28 U.S.C. § 2415(a), and claims grounded in tort must be filed within three years. 28 U.S.C. § 2415(b).

28 U.S.C. § 2415 applies to the government's claims of unjust enrichment and payment by mistake. *See Gericare,* 2000 WL 33156443, at *2-3, 12 (applying 28 U.S.C. § 2415 to plaintiff's claims of unjust enrichment and mistake of fact in a Medicare fraud case). Further, 28 U.S.C. § 2416(c) provides: "For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which – . . . (c) facts material to the right of the action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." Thus, 28 U.S.C. § 2416(c) tolled the statute of limitations until the Relator filed her Complaint because the government could not have reasonably known of the facts material to the right of action until the filing of Relator's complaint. Therefore, whether these claims sound in tort or contract, they are not barred by the applicable statute of limitations.

As to the government's claim of misrepresentation under Alabama Code § 6-5-101, a

two-year statute of limitations applies. *See* Ala. Code § 6-2-38; *see also Foremost Ins. Co. v.*

*Parham,* 693 So. 2d 409, 417 (Ala. 1997).   This two year statute of limitations began to run

when the government discovered the fraud or should have discovered the fraud in the exercise of

reasonable care. *Foremost,* 693 So. 2d at 417-21.   Relator filed her Complaint on November 24,

1997, thereby putting the government on notice of the claims involved in this action.   The

government filed its Complaint more than two years after Relator filed her Complaint.

The government contends that "[t]he United States' common law and equitable claims

are alternative theories of liability for the frauds alleged in the FCA claims.   As they rely on the

same underlying facts and fraudulent claims, they relate back to the date of relator's filing."

(Supplemental Reply of United States to Defendants' Motion to Dismiss Common Law Claims

Regarding Statute of Limitations Issue ("Government's Supp. Reply") at 5.)   However,

defendants argue:

> Defendants find no provision of law that would permit the Government's state
> law claims to relate back to the filing of the Relator's complaint.   Where
> Congress (or the Supreme Court in promulgating the Federal Rules of Civil
> Procedure) has intended to effect a relation back provision, it has done so by clear
> and express language.   Rule 15 of the Federal Rules of Civil Procedure, for
> example, explicitly provides that amendments to a pleading relate back to the
> original pleading under certain specified conditions.   No such provisions are
> found in the FCA, or in Rule 24, which deals more generally with intervenors.

(defs.' Mot. at 16.)

Federal Rule of Civil Procedure Rule 15(c) provides:

An amendment of a pleading relates back to the date of the original pleading
when
   (1)   relation back is permitted by the law that provides the statute of
         limitations applicable to the action, or
   (2)   the claim or defense asserted in the amended pleading arose out of
         the conduct, transaction, or occurrence set forth or attempted to be

> set forth in the original pleading, or
>
> (3)    the amendment changes the party or the naming of the party
>        against whom a claim is asserted if the foregoing provision (2) is
>        satisfied and, within the period provided by Rule 4(m) for service
>        of the summons and complaint, the party to be brought in by the
>        amendment (A) has received such notice of the institution of the
>        action that the party will not be prejudiced in maintaining a
>        defense on the merits, and (B) knew or should have known that,
>        but for a mistake concerning the identity of the proper party, the
>        action would have been brought against the party.

Fed. R. Civ. P. 15(c). The rationale for this rule is that "once litigation involving particular

conduct or a given transaction has been instituted, the parties are not entitled to the protection of

the statute of limitations against the later assertion by amendment of defenses or claims that

arose out of the same conduct, transaction or occurrence as set forth in the original pleading."

*United States ex rel. Koch v. Koch Industries, Inc.,* 188 F.R.D. 617, 620 (N.D. Okla. 1999)

(citing 6A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and*

*Procedure* § 1496 at 64 (2d ed. 1990) (quotation marks omitted)). Further, the very purpose of

the relation back doctrine set forth in Rule 15(c) is to circumvent the rule that new parties cannot

be added to an action by amendment after the applicable limitations period has expired. *See* 6A

Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §

1498 at 103-05 (2d ed. 1990). The critical issue in Rule 15(c) determinations is whether the

original complaint gave notice to the defendant of the claim now being asserted. *Davenport v.*

*United States,* 217 F.3d 1341, 1345 n.8 (11th Cir. 2000).

The first instance in which relation back is allowed has no application to this case

because the FCA does not authorize a relation back.[14] However, as noted above, the *qui tam*

---

[14] This provision, added in 1991, was "intended to make it clear that the rule does not
apply to preclude any relation back that may be permitted under the applicable limitations law."
Fed. R. Civ. P. 15(c)(1) Advisory Committee's Note. The Advisory Committee Notes also

provision of the FCA allows certain private parties to sue on behalf of the government.  Further,

the government has a statutory right to intervene in a *qui tam* action and is also entitled to move

for extensions on the time in which it has to intervene.  *See* 31 U.S.C. 3730 (b)(2), (b)(3).  Thus,

the additional claims alleged in the government's complaint, including the government's state

law claim, is an amendment to the complaint originally filed by the Relator.  Because the

government's state law claim arose out of the same alleged conduct as the claims set out in

Relator's Complaint, it relates back to the date on which Relator filed her Complaint.[15]  *Accord*

*Foster v. Peddicord,* 826 F.2d 1370, 1373 (4th Cir. 1987), *cert. denied,* 484 U.S. 1027 (1988)

(finding that where intervention was premised on a subrogation interest in the plaintiff's claim,

"there was a community of interest between the claims of [intervenor-plaintiff] and [plaintiff]

sufficient to allow [intervenor-plaintiff's] filing to 'relate back' to the claim intitiated by

[plaintiff]."  *Cummings v. United States,* 704 F.2d 437, 439-40 (9th Cir. 1983) (concluding that

the intervention of an insurer-subrogee was essentially equivalent to a *pro tanto* substitution of

the real party in interest, and thus, relation back to the original complaint was appropriate); *Haas*

*v. Pittsburgh Nat'l Bank,* 526 F.2d 1083, 1095-98 (3rd Cir. 1975) (reversing district court's grant

of partial summary judgment and finding that the amended complaint, which added a nominal

plaintiff who had a claim against one bank related back to the filing of the initial complaint by

the one who did not have a claim against that bank so as to toll the statute of limitations on the

---

provide that, "[w]hatever may be the controlling body of limitations law, if that law affords a
more forgiving principle of relation back than the one provided in this rule, it should be available
to save the claim."  *Id.*

[15]  The court notes that the government's common law claims for unjust enrichment and
payment by mistake also arise out of the same conduct and would relate back if they too were
outside the applicable statute of limitations.

date of the filing of the original complaint); *Brauer v. Republic Steel Corp.,* 460 F.2d 801, 804

(10th Cir. 1972) (intervening plaintiff's claim allowed under doctrine of relation back where (1)

claim arose out of the same transaction and occurrence as the original claim, (2) close identity of

interest existed between intervenor and original plaintiff, and (3) defendant made no showing of

prejudice or surprise). Thus, defendants' Motion to Dismiss is due to be denied as to the

government's common law claims.

### III.  CONCLUSION

For the foregoing reasons, the court is of the opinion that Defendants' Motion to Dismiss

Complaint of the United States in Intervention and Relator's *Qui Tam* Complaint is due to be

granted in part and denied in part. Defendants' Motion is due to be denied as to the following

claims:

1.  Relator's claims under Counts I and II against  defendants Coosa Valley Baptist
    Medical Center, Coosa Valley Home Health, and BHS:

    (a)  patients were seen by unlicensed and unsupervised service providers in
         violation of the Medicare/Medicaid regs, (*see* Relator's Compl. at ¶¶ 13-
         14);

    (b)  patient medical records and forms contained incomplete, inaccurate, and
         fraudulent documentation when submitted for Medicare and Medicaid
         reimbursement, (*see id.* at ¶¶15-18); and

    (c)  patient medical records and forms contained incomplete, inaccurate, and
         fraudulent documentation to support re-certification and medical necessity
         for additional treatment and services, (*see id.* at ¶¶ 19-23).

2.  Relator's claim against Coosa Valley Baptist Medical Center for wrongful
    termination under Count IV pursuant to 31 U.S.C. § 3730(h), (*see id.* at ¶¶ 43-45).

3.  The government's entire Complaint, except as to defendant Cherokee Baptist
    Medical Center.

Defendants' Motion to Dismiss is due to be granted as to the following claims:

1.  Relators' claims under Counts I and II against Coosa Valley Baptist Medical
    Center and BHS regarding:

    (a)    failure to collect co-payments and deductibles, (*see* Relator's Compl. at ¶ 24);

    (b)    failure to take appropriate remedial measures, (*see id.* at ¶¶ 25-26);

    (c)    the "72 hour rule," (*see id.* at ¶¶ 27-28); and

    (d)    fraudulent billing practices, (*see id.* at ¶ 30).

2.    Relator's claims under Counts I and II against Coosa Valley Home Health and BHS regarding:

    (a)    failure to collect co-payments and deductibles (*see id.* at ¶ 24); and

    (b)    failure to take appropriate remedial measures, (*see id.* at ¶¶ 25-26).

3.    All claims under Counts I and II against defendants Citizens Baptist Medical Center, Cullman Regional Medical Center, and BHS for fraudulent billing practices, (*see id.* at ¶¶ 29-31).

4.    Relator's conspiracy claim under Count III pursuant to 31 U.S.C. § 3729(a)(3), (*see id.* at ¶¶ 41-42).

5.    All claims in the government's Complaint relating to defendant Cherokee Baptist Medical Center.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

    **DONE** this ⸻ day of March, 2001.

                              _____
                              **SHARON LOVELACE BLACKBURN**
                              United States District Judge